Filed 11/4/22 P. v. Cousins CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C092868 |
| Plaintiff and Respondent, | (Super. Ct. No. 16FE016306) |
| v. | |
| TYRELL DUPRE COUSINS, | |
| Defendant and Appellant. | |

A jury found defendant Tyrell Dupre Cousins guilty of assault with a deadly weapon for driving a car that ran over his victim after an argument. On appeal, defendant contends the trial court erred in instructing the jury that the car he was driving could be an inherently deadly weapon. He also argues we should vacate any remaining unpaid portions of the jail booking and classification fees, and requests correction of the abstract of judgment. We affirm the judgment, but vacate the unpaid fees and direct correction of the abstract of judgment.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2016, brothers E.O. and A.P. went to a market where they encountered defendant and his girlfriend. At first the men joked and shook hands, but soon issues arose regarding topics including defendant's girlfriend and E.O. and defendant exchanged words. E.O. took off his shirt and wanted to fight defendant. A.P. said the brothers should leave the market. Defendant responded that E.O. should "Listen to his partner. Someone's going to get hurt." As the four left the market, they continued their aggressive behavior and cursed amongst themselves. Defendant's girlfriend heard the brothers say, "I'll shoot the mother-fucker up." Defendant's girlfriend threatened the brothers. Defendant got into the driver seat of his car and his girlfriend got into the passenger seat of the car.

A.P. and E.O. headed over to defendant's car to fight defendant. E.O. and A.P continued exchanging curses with defendant and his girlfriend. Defendant and his girlfriend drove away and E.O. and his brother ran after the car. They caught up to the car but when it turned onto the street, the brothers walked back towards the market.

At one point, A.P. heard defendant say, "Run your ass over." The day of the incident, defendant's girlfriend told the officers defendant said, "I'm going to beat their ass. I'm going to beat their mother-fucking ass." At trial, she denied he said that. Defendant drove around the block and came back to the market.

When the brothers saw the car turn back onto the street they were on, they started walking toward the car again with the intent to fight. Defendant's girlfriend stated the brothers started to kick the car. The car pulled over and defendant got out and stood by the door, while his girlfriend got out with a tool in her hand. The girlfriend swung the tool at A.P. while defendant and E.O. continued to exchange words and ultimately started to fight. Next, defendant and his girlfriend got back into his car, backed up, and drove away again.

The brothers walked back to the parking lot of the market. As they crossed the street, they saw defendant's car. They ran to the curb, but defendant drove his car very fast and swerved toward them. The girlfriend shouted, "Stop you're going to hit him." The car struck A.P. and dragged him down the road 184 feet under the car. It did not appear that defendant immediately hit the brakes after he hit A.P.

Defendant's girlfriend testified it was very bright out that day and she did not see the brothers until one of them was under the car. She claimed the car was old and had bad brakes and bad power steering. The responding officers and detective all testified it was sunny dry day with no rain and clear visibility. The prosecution's expert collision investigator testified he believed defendant intentionally swerved to hit A.P. There were no line of sight problems, the collision occurred off the roadway, and the video of the collision showed the car turning at the last minute.

After the collision, E.O. ran to the car. Defendant and his girlfriend got out of the car and left the scene. A.P. was under the car and was severely injured.

Defendant did not testify at trial.

The second amended information charged defendant with attempted first degree murder (count one) and assault with a deadly weapon (count two). (Pen. Code, §§ 664, subd. (a), 187, subd. (a) & 245, subd. (a)(1).) [1] The information also alleged defendant personally inflicted great bodily injury on his victim and the offense was both a serious felony and a serious and violent felony. (§§ 12022.7, subd. (b), 1192.7, subd. (c), 1192.7, subd. (c)(8) and 667.5, subd. (c)(8).)

The jury found defendant guilty of assault with a deadly weapon. (§ 245, subd. (a)(1).) It also found true the great bodily injury enhancement. The jury failed to reach a verdict on the attempted murder charge and the trial court declared a mistrial on this

---

[1] Undesignated statutory references are to the Penal Code.

3

count.  The jury sent a note to the court expressing it was deadlocked on the question of whether defendant had the intent to kill.

On count two and its enhancement, the trial court sentenced defendant to nine years in state prison.[2]  The court also imposed a jail booking fee of $402.38 and a jail classification fee of $99.19.

Defendant timely appealed in October 2020.  After multiple continuances in the briefing schedule at the parties' respective requests, the case was fully briefed on September 8, 2022, and assigned to this panel shortly thereafter.  The parties waived argument and the case was deemed submitted on November 1, 2022.

## DISCUSSION

Defendant argues the trial court erred in instructing the jury regarding inherently deadly weapons.  He further contends we should strike the jail booking fee and the jail classification fee and correct the abstract of judgment to show his conviction for assault with a deadly weapon was by jury verdict rather than by plea.

The Attorney General concedes the instructional error, but argues the error was harmless.  He agrees any unpaid portion of the two fees at issue should be vacated and the abstract of judgment should be corrected.

### I

### *Instructional Error*

#### A. *Additional Background*

The trial court instructed the jury on assault with a deadly weapon using pattern instruction CALCRIM No. 875, stating: "[T]he District Attorney would have to prove

---

[2]  In exchange for the prosecution's agreement not to retry the attempted murder count, defendant pled no contest to evading a police officer, theft, and unlawful driving of a vehicle in a separate incident. (Veh. Code, §§ 2800.2, subd. (a), 10851, subd. (a).)  He also admitted an enhancement under section 12022.1.  The trial court sentenced him to an additional three years and four months in prison on these charges.

4

the following: [¶] 1. . . Defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person; [¶] . . . Defendant did the act willfully; [¶] When. . . Defendant acted he was aware of facts that would lead a reasonable person to realize that his acts by its [*sic*] nature would directly and probably result in the application of force to somebody; [¶] And when. . . Defendant acted, he had the present ability to apply force with a deadly weapon other than a firearm to a person." The court then instructed the jury: "A deadly weapon other than a firearm is any object, instrument, or weapon *that is inherently deadly* or one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury." (Italics added.)

During the closing argument, on the element of a deadly weapon, the prosecutor argued: "The way to think about that is we all think of pillows. You probably don't think of a pillow being a deadly instrument. It's not. You sleep on it at night. It's kind of comfortable. But, of course, if somebody took a pillow and smothered it over your face for three minutes and suffocated you, that pillow becomes a deadly instrument because of the way that it was used. [¶] Same way with a car. The car is a very heavy, very fast machine. And if you drive it at somebody and hit them, that's using it in such a way that certainly a car is capable of causing death or great bodily injury. And by a miracle in this case, it is not a homicide and [A.P.] did live in this case. And anybody who is familiar with cars knows that they are capable of causing great bodily injury and death, we talked about that earlier."

In his opening statement and closing argument, defense counsel argued that the collision was an "accident" rather than an attempted murder or assault with a deadly weapon. Specifically on the assault count, counsel argued defendant should have been charged only with hit and run causing injury. Counsel argued in closing: "Because as the instructions will note, you don't have to prove intent to kill. All you have to prove is that this is on purpose. And that he applied force using a deadly weapon. Here, the car,

5

I'm not arguing against that. And, you know . . . that use of a weapon would apply force to the victim, and then you'd have the ability to use the force."

B. *Analysis*

We agree with the parties that instructing the jury on inherently deadly weapons on these facts was error, as we next explain.

In *People v. Aledamat* (2019) 8 Cal.5th 1 at page 4 (*Aledamat*), the defendant used a box cutter as a weapon, and during his trial the jury was instructed with CALCRIM No. 875 allowing it to conclude the box cutter was an inherently deadly weapon *or* was deadly as used. (*Aledamat*, at p. 6.) Our Supreme Court explained, " '[a]s used in section 245, subdivision (a)(1), a "deadly weapon" is "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." [Citation.] Some few objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such.' " (*Ibid.*) But an object that can be used for innocent purposes is not among the few objects that are inherently deadly weapons. These " '[o]ther objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue.' " (*Ibid.*)

This distinction between objects that are inherently deadly and objects that are deadly because of the manner in which they are used is not obvious from the language of the instruction, nor is this question one a jury is equipped to answer without proper instruction. (*Aledamat, supra*, 8 Cal.5th at p. 7) A car is *not* inherently dangerous, but *may* be a deadly weapon because of the way it is used. (*People v. Marsh* (2019) 37 Cal.App.5th 474, 486-488.) As a result, where the instrumentality of an assault with a deadly weapon is not an inherently deadly weapon (like defendant's car here), the trial

court errs when it instructs the jury on both theories under which the weapon might be considered deadly. (*Ibid.*) Thus, it was error to instruct using the "inherently dangerous" language in the pattern instruction.

We next turn to the harmlessness of the error, and apply test set forth in *Chapman v. California* (1967) 386 U.S. 18 at page 24. (*Aledamat, supra*, 8 Cal.5th at p. 13.) "The reviewing court must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, it determines the error was harmless beyond a reasonable doubt." (*Ibid.*)

In *Aledamat,* our high court concluded the error was harmless in part because the jury was instructed it should consider all the surrounding circumstances including the object's possession and whether it would be used for a dangerous purpose. (*Aledamat, supra*, 8 Cal.5th at p. 14.) Further, the court examined the arguments of counsel, which had directed the jury to consider the manner in which the box cutter had been used. (*Ibid.*)

Here, while the trial court did not specifically discuss considering all the surrounding circumstances with the jury, examination of the evidence presented and arguments discussing that evidence reveals the instructional error was harmless beyond a reasonable doubt on the facts and circumstances of this case. First, the question presented to the jury based on all of the evidence was whether it believed the prosecutor's theory that defendant intentionally ran down the victim with his car or the defense theory that this was just a horrible accident. The evidence of the extended encounter prior to the collision suggested defendant was angry with the brothers and came back to hurt the man who was discourteous to his girlfriend and engaged in mutually aggressive and pugnacious conduct. Defendant's actions and intent were the focus of both parties' evidence and argument in this case, rather than the nature of the weapon defendant used. The focus of this case was not whether the car itself was a deadly weapon, either because

7

it was inherently deadly (which it was not), or deadly due to the manner defendant used it (which it was).

Further, neither party argued the car was a deadly weapon because it was inherently deadly. Rather, the prosecutor specifically argued the car was a deadly weapon *as it was used*. As noted *ante,* he analogized the car to a pillow. As normally used, a pillow allows a person to rest comfortably. In the hands of a murderer, it can be used as a deadly weapon and snuff out a life. By analogy, a car has similar benign and harmful uses, and can be *used* to inflict bodily injury or death.

Defense counsel conceded in argument that the car was used as a deadly weapon in this particular case. He stated: "Because as the instructions will note, you don't have to prove intent to kill. All you have to prove is that this is on purpose. And that he applied force using a deadly weapon. Here, the car, I'm not arguing against that." His argument instead focused on defendant's *intent* at the time of the crash and argued the incident was an "accident" rather than purposeful conduct on defendant's part.

Our Supreme Court also reviewed the jury's verdict in *Aledamat* to determine whether the instructional error was harmless. (*Aledamat, supra*, 8 Cal.5th at p. 15.) As instructed under CALCRIM No. 875, "the jury necessarily found: (1) defendant did an act with a deadly weapon (either inherently or as used) that by its nature would directly and probably result in the application of force; (2) defendant was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and (3) defendant had the present ability to apply force with a deadly weapon to a person." (*Aledamat*, at p. 15.) The court concluded that " 'No reasonable jury that made all of these findings could have failed to find' that defendant used the box cutter in a way that is capable of causing or likely to cause death or great bodily injury." (*Ibid*.)

Here, the jury was similarly instructed and its verdict was required to include identical findings. In addition, here the jury found true the allegation defendant

8

personally inflicted great bodily injury on the victim. Thus, the jury necessarily concluded the car was capable of producing, and likely to produce, death or great bodily injury in the way it was used, and that it actually did so.

Viewing the evidence, the arguments of counsel, and the jury's verdict, we conclude the trial court's error in instructing the jury on the "inherently deadly" option was harmless beyond a reasonable doubt.

## II

### *Fees and Abstract of Judgment*

Defendant argues the jail booking fee and the jail classification fee imposed pursuant to Government Code section 29550.2 are unenforceable in light of Assembly Bill No. 1869 (2019-2020 Reg. Sess.) (Stats. 2020, ch. 92, § 11). The Attorney General concedes the change in the law resulting from this bill is retroactive and any unpaid portions of the jail fees that remain after July 1, 2021, are uncollectible and unenforceable. We agree with the parties and shall vacate any portion of those fees unpaid as of July 1, 2021. (Gov. Code, § 6111, subd. (a); *People v. Lopez-Vinck* (2021) 68 Cal.App.5th 945, 953.)

As noted by defendant, and conceded by the Attorney General, the abstract of judgment also erroneously states defendant's conviction for assault with a deadly weapon was by plea, rather than by a jury trial. We will direct the trial court to correct that clerical error. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

9

### DISPOSITION

The judgment is affirmed. Any portion of the jail classification and jail booking fees imposed under Government Code section 29550.2 and unpaid as of July 1, 2021, is vacated pursuant to Government Code section 6111, subdivision (a). The clerk of the trial court is directed to prepare a corrected abstract of judgment deleting those fees and correcting the "convicted by" notation to show defendant was convicted by a jury trial on the assault with a deadly weapon count and forward a certified copy to the Department of Corrections and Rehabilitation.


                                                     /s/
                                      Duarte, Acting P. J.


We concur:


      /s/
Hoch, J.


      /s/
Renner, J.